Solomon Arafe *vs.* J. Murray Howe & another, trustees.

Suffolk.    March 21, 1917.    July 12, 1917.

Present: Rugg, C. J., Braley, De Courcy, Crosby, & Pierce, JJ.

*Landlord and Tenant.    Contract,* Reformation.    *Equity Jurisdiction,* To reform contract.    *Damages,* In contract.    *Equity Pleading and Practice,* Decree.

In a suit in equity by a lessee to reform a lease to him of the basement of a business building and for an abatement of rent, the trial judge found that "the whole basement under the building leased to the plaintiff includes the space under the sidewalk and outside the vertical plane of the walls of the building." There was nothing to show that the portion of the basement under the side-

walk was not used in connection with the basement as a whole. Apparently it was constructed originally for such use and was not accessible to any one except the plaintiff. The plaintiff and the defendant both had acted in accordance with an understanding that the lease covered the whole basement, including the part under the sidewalk. *Held,* that the finding of the judge was warranted.

Where the parties to a lease have put upon it a certain construction as to the extent of the premises covered by it, which is not contrary to its terms and is not forbidden by any rule of law, both parties will be bound by such construction.

Where a lease of a basement of a business building provided that the lessors might "introduce additional machinery, pipes, wires or fixtures, if they should elect so to do," this was *held* to authorize the placing by the lessor of steam or water pipes in the basement during the term of the lease.

The lessor of a basement in a business building, finding it necessary, in order to make alterations in a store above, to erect certain posts and stringers in the basement, made an agreement in writing with the lessee of the basement that the lessor should be permitted to erect the posts and stringers as shown on a certain plan attached to the agreement and that the lessee should have a yearly reduction of $500 in the rent paid by him. This placing of the posts and stringers in accordance with the contract and the plan necessitated the closing up of a window in the toilet room in the basement. *Held,* that the closing up of the window in the toilet room gave the lessee no right to relief in equity by damages or otherwise, it having been paid for by the reduction of rent already made.

In the same suit in equity brought by the lessee against his lessor it was *held* that the plaintiff was entitled to no relief or damages for any interference with or impairment of the ventilation of the toilet room caused by the closing up of the window.

In the same suit it was *held* that the plaintiff was entitled to no damages by reason of the impairment of the ventilation and light of the basement caused by the lessor placing in the basement pipes which he had a right to place there under the terms of the lease, there being no evidence to show that the lessor in exercising his right to place the pipes there did not act reasonably and in good faith.

In the same suit it was *held* that this court could not say that a finding of the trial judge was not warranted to the effect that "the plaintiff was not at fault for refusing to permit attempts at repairing injury not explained to him."

In the same suit the trial judge found that the structure in the basement under the sidewalk was not built by either the plaintiff or the defendant, and it appeared that the structure was used by the city of Boston in connection with its high pressure water system, but the evidence failed to show who placed it there, and it was *held,* that there was no evidence to show a taking by the city by right of eminent domain and consequently that the plaintiff was not entitled to a suspension or abatement of "a just proportion of the rent" under a clause of the lease relating to a taking by right of eminent domain.

In the same suit the trial judge made a finding that the plaintiff because of the presence of the structure was entitled to a reduction of rent. The ground on which the judge made this finding did not appear in the record. The judge assessed the damages at $200 a year and ordered a final decree by which the annual rent reserved in the lease should be reduced by that amount each year during the term of the lease. *Held,* that the defendant would not be liable in damages unless the structure under the sidewalk was erected and maintained upon the leased premises by his authority or consent express or implied.

It *also was held* that, in any event, the assessment of damages was erroneous, as the judge had no power to change the contract between the parties, and, if the plaintiff should be entitled to damages, the total amount must be assessed in one sum which the defendants should be ordered to pay to the plaintiff.

In the suit above described it was *ordered* that the decree should be reversed and that the case should stand for hearing upon the question, whether the structure in the basement under the sidewalk was placed there and afterwards maintained by license or authority of the defendants, and that, if it should be found that it was, the damages sustained by the plaintiff by reason thereof should be determined.

BILL IN EQUITY, filed in the Superior Court on October 4, 1915, by the lessee of the basement of the building numbered from 83 to 87, inclusive, on Summer Street in Boston, against the Trustees of the Kingston Trust, under a deed of trust dated June 10, 1913, praying (1) that the defendants be enjoined from allowing certain iron pipes, alleged to have been installed by the agents of the defendants, to remain in such a position as to make it impossible to open certain windows in the basement, (2) that the defendants be ordered to remove such iron pipes, (3) that the lease from the defendants to the plaintiff, dated August 5, 1914, be reformed and that a portion of the rent fixed by that indenture be abated because of the taking on the northerly side of the premises and (4) that the plaintiff's damages, which were suffered by reason of the taking of windows in the basement and by reason of the placing of the iron pipes, be assessed.

The case was heard by *Wait*, J., the evidence being taken by a commissioner appointed under Equity Rule 35. The judge made the following memorandum of decision:

"This cause came on to be heard and was argued by counsel. On consideration thereof I find and rule that 'the whole basement under the building' leased to the plaintiff includes the space under the sidewalk and outside the vertical plane of the walls of the building, occupied by the plaintiff.

"The presence in said space of the structure placed there in October of 1914 is a deprivation of space for which the defendants are liable for a reduction of rent while it is maintained.

"The plaintiff was not in fault for refusing to permit attempts at repairing injury not explained to him; he has been damaged by the action of the defendants in interfering with the closing and opening of windows; by the blocking up of the window in

the toilet room, and by the interference with the ventilation of the toilet room. It is difficult to express this damage in dollars, but I fix it at $200 per year.

"Let a decree be prepared accordingly."

The following additional finding was indorsed on the memorandum:

"Filed also as a finding of facts. The structure referred to of October 1914 was not placed by either the plaintiff or the defendants. The damages are estimated to cover both the deprivation and the other damage referred to."

Later by order of the judge a final decree was entered in accordance with the memorandum of decision. By such decree it was ordered "that the lease of the whole of the basement under the building situated on the corner of Summer and Kingston Streets and numbered 83–87 Summer Street in Boston in the county of Suffolk, made by the defendants to the plaintiff by an indenture dated August 5, 1914, as modified by the written agreement dated March 2, 1915, . . . be and the same hereby is modified so that the rent reserved in said lease shall be reduced $200 per year during the term to which said lease as modified in said agreement of March 2, 1915, entitles him, to be paid by equal monthly payments in advance on the first day of each and every month for the month beginning with that day, and that judgment may be entered against the defendants in favor of the plaintiff for the sum of $515.88, overpaid from November 1, 1914, to and including February 1, 1917, together with $26.75 costs of this action, as taxed by the clerk."

The defendants appealed.

*James J. McCarthy*, (*R. M. Bowen* with him,) for the defendants.

*E. R. Anderson*, (*H. Guild* with him,) for the plaintiff.

CROSBY, J. The plaintiff is the lessee named in a certain lease given to him by the defendants of "The whole of the basement under the building situated on the corner of Summer and Kingston streets in said Boston . . . " with certain exceptions not material to the issues involved.

The premises were to be used by the plaintiff as a bowling alley and pool room and the lease is for the term of five years from October 1, 1914. This suit is brought for the re-formation of the lease and for an abatement and reduction of the rent reserved

on account of the taking of a part of the premises leased and for other acts done or permitted by the defendants.

1. The judge of the Superior Court before whom the case was heard found that "the whole basement under the building leased to the plaintiff includes the space under the sidewalk and outside the vertical plane of the walls of the building occupied by the plaintiff." This finding was warranted. There was nothing to show that that portion of the basement under the sidewalk was not be to used in connection with the basement as a whole. Apparently it was originally constructed for such use, and is not now accessible to anyone except the plaintiff.

The plaintiff and the defendants understood that the lease covered the whole basement including that part under the sidewalk and acted in accordance with such understanding. Such was the manifest intention of the parties, and the construction which they put upon the lease should be followed unless forbidden by some positive rule of law. In the present case we cannot say that the construction adopted and acted upon violates any rule of law. *Dakin* v. *Savage*, 172 Mass. 23. *Epstein* v. *Dunbar*, 221 Mass. 579.

The course of conduct of the parties constitutes a construction of the lease which will prevent the lessee at this time from asserting a different construction. *Epstein* v. *Dunbar, supra.*

2. The placing of steam or water pipes in the basement during the term of the lease by the defendants was not a violation thereof but was expressly authorized thereby by the provision which authorized the defendants to "introduce additional machinery, pipes, wires or fixtures, if they should elect so to do."

3. About six months after the beginning of the term, the defendants desired to make certain alterations in the store, on the first floor of the building immediately above the basement leased to the plaintiff, which necessitated placing some posts and stringers in the basement as shown on a certain plan; and on March 2, 1915, the plaintiff and the defendants entered into an agreement in writing, in which the plaintiff agreed that the defendants should be permitted to erect the posts and stringers, as shown on the plan, which was attached to the agreement, and the plaintiff was to have a yearly reduction of rent of $500. As the placing of the posts and stringers in the basement necessitated closing up the

window in the toilet room, the plaintiff is not entitled to damages therefor, as the closing up of this window was in accordance with the contract and plan, and was one of the changes made for which he was to receive a reduction of rent.

4. As the defendants for the reason stated are not liable in damages for closing the window in the toilet room, the plaintiff is not entitled to recover for any interference with or impairment of the ventilation of that room caused by closing the window.

As the placing of pipes in the basement by the lessors was authorized by the express provisions of the lease, as already pointed out, no damages can be recovered therefor, and although the evidence shows that the pipes prevented some of the windows in the basement from being opened and others could only be opened to a very limited extent, and that thereby the ventilation and light of the basement is impaired, still for such interference, the plaintiff is not entitled to damages as there is no evidence to show that the defendants in exercising their right to introduce the pipes did not act reasonably and in good faith.

5. We cannot say that the finding of the trial judge was not warranted that "The plaintiff was not in fault for refusing to permit attempts at repairing injury not explained to him."

6. The lessee contends that a structure built in the basement under the sidewalk in October, 1914, and which is used by the city of Boston in connection with its high pressure water system, was a taking of a part of the leased premises by right of eminent domain. This contention cannot be sustained. There is no evidence to show such a taking or any taking by the city; all that appears is that the structure is used by the city of Boston. The evidence fails to show who placed it there, although it is found by the judge that it was not built by either the plaintiff or the defendants.

That part of the proviso in the lease which entitles the lessee to a suspension or abatement of "a just proportion of the rent" has no application to the facts as shown by the evidence.

The judge made the following finding, "The presence in said space of the structure placed there in October of 1914, is a deprivation of space for which the defendants are liable for a reduction of rent while it is maintained."

As there was no evidence to show that there had been a taking

of any part of the leased premises by right of eminent domain or that the structure had been erected under such a right, the defendants are not liable for a reduction of rent, nor would they be liable if it was placed there by a stranger, nor would they be so liable unless it was erected and maintained upon the leased premises by their authority or consent express or implied.

The ground upon which the judge made the finding that the plaintiff because of the presence of the structure was entitled to a reduction of rent does not appear in the record.

7. The damages assessed by the presiding judge were fixed at $200 a year, and the final decree provided that the annual rent reserved in the lease should be reduced by that amount each year during the term thereof. This was erroneous, as the judge did not have power so to change the contract between the parties. If the plaintiff shall be found to be entitled to damages, the final decree should state the total damages assessed in one sum and direct that that amount be paid by the defendants to the plaintiff.

The decree must be reversed; the case is to stand for hearing upon the question whether the structure in the basement under the sidewalk was placed there and afterwards maintained by license or authority of the defendants, and, if so, the damages sustained by the plaintiff on account thereof are to be determined.

*So ordered.*