THE PHILADELPHIA AND READING COAL AND IRON COMPANY *vs.* SALEM TERMINAL CORPORATION.

Suffolk. January 14, 1925. — May 22, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Landlord and Tenant*, Construction of lease. *Wharf.*

The Eastern Railroad Company which, by St. 1872, c. 194, had been authorized to construct a wharf or wharves either solid or on piers across the flats in front of its estate in Salem Harbor and had received licenses from the harbor commission in 1873 for the construction of a wharf "partly on piles and partly solid," according to a plan filed, and in 1874 for the construction of a triangular addition to one side of the end of the wharf where a pier section extending into the harbor began, in 1874 made to a coal shipping corporation, which had begun the construction of the wharf and the pier and was contemplating the construction of the triangular section, a lease which referred to such construction and, after a description by courses and distances of the triangular section of the addition, demised the wharf and pier for a term of twenty years, "Together with the Structure now being erected . . . and the rights and privileges appurtenant to the use of the Said Structure as a Wharf and Pier." The lease also provided that the lessor be given exclusive possession of the pier and triangular addition for the moving of its cars and that it agreed to pay the lessee a yearly rental therefor. When the structure was completed, there was a wharf extending thirteen hundred feet from the shore, beyond that a pier extending seven hundred feet, and, at the side of the end of the wharf structure, the triangular addition. The lessor filled the slope outside the wharf and placed riprap except at the side of the triangular addition. Under the provisions in the lease as to extension of its term, a successor

of the lessor extended it in 1893 and again in 1912, each time for twenty years.  By a provision of the last extension, the clause of the lease giving the lessor exclusive possession was abrogated.  A successor in title to the lessor began a pile construction extending from the side of the triangular section which would interfere with its use for wharf purposes, and the coal shipping corporation sought by a bill in equity to enjoin such construction.  *Held,* that

(1) The lease and the indentures of extension should be construed as one instrument by which the defendant was bound;

· (2) The demise, in the absence of express restrictions, carried an implication that the lessee was to have all that was necessary to the enjoyment of the leasehold in so far as the lessor had power to give it;.

(3) The leased area comprised the triangular addition, the wharf, the pier, and the structure;

(4) It appearing that for some years the plaintiff had used the space beside the triangular addition for docking small vessels or lighters of shallow draft and that such use still was feasible, the mere facts that under present conditions in "the coal business in the vicinity of Salem there is no demand for such use in connection with that business and there was no evidence of any demand for such use for any other business," did not as a matter of law require a finding that the plaintiff had lost its property right to the use of that part of the wharf;

(5) The defendant should be enjoined from placing any structure so that the plaintiff would be hindered in the use of any part of the triangular addition for docking purposes;

(6) The mere fact that, by the use of a method inconvenient to it, the plaintiff might satisfy its requirements without using the entire one hundred and twenty feet of docking space beside the triangular addition, did not warrant a restricting of the plaintiff to the space it thus actually would require.

Exceptions by the defendant to the admission in evidence by a master who heard the suit above described of St. 1872, c. 194, of the license given to the original lessee in 1873 and 1874, and of testimony tending to show the use and method of use by the plaintiff of the "triangular addition to the wharf," were overruled.

BILL IN EQUITY, filed in the Superior Court on June 16, 1924, seeking to enjoin the defendant from placing pilings so juxtaposed to a wharf, in possession of the plaintiff under a lease from the defendant's predecessor in title, as to hinder the plaintiff in the use of a portion of the wharf.

In the Superior Court, the suit was heard by a master. Material findings by the master are described in the opinion.

Material features of the plan, exhibit 16 referred to in the opinion, are delineated in the illustration on the next page. "The wharf or bridge" described in the opinion extended from the line A–C northwesterly thirteen hundred feet to

Derby Street in Salem, and the pier section extended seven hundred feet southeasterly from that line to the sea. The "triangular addition" is included within the bounds B–C–E. The "riprap" is shown as diagonally shaded. The piles driven by the defendant as the beginning of a sea wall which it contemplated, and which the plaintiff sought to enjoin, ran southwesterly from the bound F and are shown horizontally shaded. The distance from the termination of the "riprap," D, to the landward side of these piles was forty-five and one half feet. The distance from the seaward side of

these piles to the end of the wharf at C was sixty-one feet. The plaintiff claimed a right to uninterrupted use of the entire space C–D.

The defendant filed exceptions to the report of the master based on the following objections:

1. Because the master admitted in evidence St. 1872, c. 194.

2. Because the master admitted in evidence the license dated October 31, 1873, granted by the harbor commissioners to Eastern Railroad Company, and the plan accompanying the same.

3. Because the master admitted evidence offered by the plaintiff through the testimony of Thomas M. Richards concerning use or alleged use from about 1893 to 1907, made by the plaintiff of the "triangular section" so called, of the premises leased to the plaintiff and concerned in the controversy in this case.

4. Because the master admitted evidence offered by the plaintiff through the witness Thomas M. Richards, as to the way in which, when the plaintiff between 1893 and 1907 was making use of the "triangular section" of the wharf, it was customary to handle the lighter.

The suit was heard by *Morton, J.*, who found and ruled as follows:

"When the lease was executed the Eastern Railroad had been licensed by an act of Legislature approved by the harbor commissioners to 'construct a wharf or wharves either solid or on pier and to lay vessels at the ends and sides' thereof. The ordinary meaning of 'wharf' is 'a landing place for vessels and cargoes.' The rights appurtenant thereto carry dockage rights. The provision of the second paragraph of the lease that the 'pile wharf' should be adapted for railroad tracks is consistent with the intention to provide proper structural strength and does not warrant a finding that it was inserted as a limitation of use. The wharf had a cap log and ring bolts.

"I rule that the lease gave the petitioner dockage rights on said one hundred and twenty foot section [shown on the line C D in the illustration]. These rights must be measured by the conditions existing when the lease was executed and not extended to include a broader use for dockage purposes than such conditions then reasonably warranted. The lease gave no right to dredge.

"The wharf was not then nor ever has been adapted for general dockage. It is reasonably adapted without dredging only for docking or laying flat bottom boats not self propeling of six feet draft, including lighters, eighty feet long by thirty-five feet wide, when and if fender piles are driven. Such boats would require a space at least forty feet wide southwesterly from the southwesterly side of the section in question and can be pushed and warped in to its moorings.

"While this is not the usual method of handling lighters, it is a proper way in handling them in narrow spaces.

"The way in which the plaintiff formerly availed itself of its dockage rights, its failure for many years to so avail itself of such rights and the present lack of necessity for their

exercise indicate that this method is a reasonable one by which to determine the extent of its present rights and the amount of space required for their exercise.

"I rule therefore that the space of forty feet above stated is all that the plaintiff can reasonably require, and that the defendant should be enjoined only so far as its said wall will encroach thereon."

By order of the judge, there were entered an interlocutory decree overruling the defendant's exceptions and a final decree enjoining the defendant "from driving any piles, · erecting contemplated sea wall, or otherwise creating any obstruction to plaintiff's access to the wharf and premises described in the bill of complaint herein within a space of forty feet wide, southwesterly from and measured at right angles to the triangular section, so called, of the wharf structure referred to in the bill of complaint and extending southeasterly from the southeasterly end of the riprap, as described in the master's report," and ordering the defendant to remove forthwith from said forty foot space all piles and other structures or obstructions, if any, which it had heretofore driven, erected or created therein. "But nothing herein contained shall be construed to restrain or enjoin the defendant, its agent, servants and attorneys, nor to prevent it or them, and each of them, from proceeding with the driving of the piling, erection of the sea wall and other contemplated work as referred to in the bill of complaint and the master's report so long as and provided it and they keep said piling, sea wall and other contemplated work ·at least forty feet distant in all its parts from that portion of the triangular section, so called, of the wharf structure on the premises described in the bill of complaint which lies southeasterly of the southeasterly end of the riprap, as described in the master's report, said distance of forty feet being measured on a line at right angles to the southwesterly side line of said triangular section."

The defendant appealed from the interlocutory decree and both parties appealed from the final decree.

*H. F. Knight*, for the defendant.

*C. F. Lovejoy*, (*C. C. Bucknam* with him,) for the plaintiff.

BRALEY, J. The Eastern Railroad Company in 1864 acquired title to certain lands and flats on the water front of the harbor in the city of Salem, which were substantially rectangular, and extended from Derby Street southeasterly to tide water. November 11, 1874, it demised and let to the plaintiff for a term of twenty years with a covenant for extension, the northeasterly portion at an annual rental of $5. The remaining lands and flats lay to the northeast and southwest of the leased premises. In 1890 the Boston and Maine Railroad succeeded to the entire title of the lessor, which in 1923 it conveyed to the defendant. The extent of the leasehold, and the plaintiff's rights thereunder are the questions for decision.

By St. 1872, c. 194, which was rightly admitted in evidence, the Eastern Railroad Company had been authorized to construct a wharf or wharves either solid or on piers across the flats in front of its estate, running toward the northwest side of the harbor channel for such distance from the present line of the shore as might be approved by the board of harbor commissioners, "and shall have the right to lay vessels at the ends and sides of such wharf or wharves and receive dockage and wharfage thereon . . . ." The company having notified the commissioners of its intention to build a wharf partly on piles and partly solid, was licensed on June 28, 1873, "to proceed and build said wharf, partly on piles and partly solid" in conformity to a plan in the office of the board, a copy of which forms part of the master's report. The board also granted another license October 24, 1874, which was admissible. This license however differed from the first license. It sanctioned among other provisions the construction of a triangular section of the wharf shown on the plan filed with the commissioners as the "proposed addition."

The plaintiff at the date of the lease was constructing upon the northeasterly side of the land and flats a pile wharf or bridge extending from Derby Street thirteen hundred feet, and a pier at the seaward end one hundred and three feet in width and seven hundred feet in length. "And whereas it has been agreed that a triangular addition shall be made to the said Wharf and Pier, and that the terms and Conditions

as finally settled on which the said Structure is being erected and is to be held and used shall be reduced to writing," the combined lease and agreement under which the plaintiff occupied was executed and delivered. The demise in the first clause of the instrument after a description by courses and distances of the triangular section or addition, is followed by the words, "Together with the Structure now being erected . . . and the rights and privileges appurtenant to the use of the Said Structure as a Wharf and Pier." The plaintiff covenanted to continue and complete with reasonable dispatch the construction of a pile wharf adapted for the support of railroad tracks with a substantial pier at the seaward end suited for the loading and unloading of vessels, and furnished with coal pockets, and to keep the wharf and pier in suitable repair. The covenant further provides that the structure as now located is nearly completed excepting the triangular section "before mentioned," being with the addition to be made thereto of that section described as follows: "A pile wharf or bridge extending Seaward from . . . Derby Street One Thousand Feet in length, and twenty six feet in width, thence extending a further length of three hundred feet, and widening regularly upon the South Westerly Side thereof to the width of one hundred and one feet, and a substantial Pier at the Seaward end of the said Wharf one hundred and three feet in width and seven hundred feet in length." It is further provided in the fourth clause, that during the term or any extension, the lessor is to have the exclusive possession and use of the portion of the pier and of the triangular addition to the wharf or bridge included within the space colored red on the horizontal plan referred to in the second clause, and the right to use the pile wharf or bridge extending to the pier for the movement of cars to and from the portions thus set apart, for which the plaintiff was to be paid a yearly rental, and one half of the expense of keeping the wharf and bridge in repair.

The first extension was April 7, 1893, for a further term of twenty years. The second extension was July 10, 1912, wherein clause four, just described, was abrogated, and the plaintiff after July 1, 1912, was given the exclusive posses-

sion of the wharf and pier for twenty years with the privilege of a further extension for a similar period upon notice to the lessor. The indentures of extension were executed by the Boston and Maine Railroad, which with the consent of the plaintiff had filled solid the part of the structure or bridge built on piers extending thirteen hundred feet from Derby Street. The slope of the filling on the northeasterly side projected beyond the side lines, and was riprapped for the entire distance. The riprap on the southwesterly side which also projected beyond the slope, extended from Derby Street to a point on the wharf section, where it ended one hundred and twenty feet distant from the junction of that point with the pier. The flats covered by the slope of the filling and the riprapping were within the line of the railroad corporation's abutting ownership when the work was done. The structure, however it may have been described, had now become by the voluntary acts of the successor in title of the lessor a filled structure or wharf for its entire length, protected by riprap, at the end of which on the southwesterly side, and running to the pier section, it had a cap log with ring bolts to which lines from a vessel could be made fast. The result of what had been done is shown by the plan, Exhibit sixteen, forming part of the record. The railroad tracks from Derby Street to the pier section are also delineated. The coal pockets and apparatus are on the northeasterly side of that section which is adapted only for the unloading of vessels.

It is contended by the defendant, that the lease does not purport to give to the plaintiff all the rights to dock and lay vessels which the lessor could have exercised. As the structure is described, it consists of two distinct parts, a pile wharf or bridge and a pier at the seaward end. The triangular section is treated as part of the pile wharf or bridge rather than as part of the pier. The lease contemplated that the pile wharf or bridge, including the triangular section, should be used for railroad tracks for the transportation of coal and incidental uses and not for the loading and unloading of vessels thereon. The master finds, if material, that the right to dock or lay vessels in the triangular section is not

necessary for the natural use of any part of the structure. But the lease after the description of this section immediately recites, "Together with the Structure now being erected and to be completed as hereinafter provided," with the rights and privileges appurtenant to the use of said structure as a wharf and pier, and thereafter in so far as material, the words "Wharf," "Pier" and "Structure" are interchangeably used. The fifth clause expressly provides, "that the taxes chargeable against the site hereby demised . . . upon which the said Structure, Wharf or Bridge and Pier is to be completed" shall be paid by the lessor, but the taxes chargeable against the "structure itself shall be paid by the" lessee. And by the sixth clause the lessee is to keep "said wharf and Pier in proper and suitable repair as a Railroad Wharf and Pier," and to pay one half the expense thereof. It is "to load at its own cost and by its own servants upon cars furnished by the" lessor, "all coal which it may receive at said Wharf and Pier." Under the last extension, the indenture refers to the premises, as the side of a certain wharf and pier as described in the lease, which the plaintiff was to erect, and has erected at its own sole cost and expense, known as "Salem wharf." The license of the commissioners to wharf and fill solid, issued on the application of the lessor, under which the wharf and pier in question were projected, also describe the premises as "a wharf, partly solid and partly on piles."

The lease and the indentures of extension may be construed as one instrument by which the defendant is bound. If not at variance with rules of law, the intention of the parties found in the language used, the conditions shown by the lease, and the indentures, controls. And the demise in the absence of express restrictions carried an implication, that the lessee was to have all that was necessary to the enjoyment of the leasehold in so far as the lessor had power to give it. *Child* v. *Wells*, 13 Pick. 121. *Haven* v. *Adams*, 4 Allen, 80, 92. *Ripley* v. *Knight*, 123 Mass. 515. *Lipsky* v. *Heller*, 199 Mass. 310. *Arafe* v. *Howe*, 228 Mass. 46, 50. *Grennan* v. *Murray-Miller Co.* 244 Mass. 336, 339.

The triangular parcel, even if treated as the defendant contends, as distinct, was by the terms of the second exten-

sion in the sole and exclusive possession of the plaintiff. If its use and occupation is limited to the location of the railroad tracks, the plaintiff for a distance of one hundred and twenty feet on the southwesterly side of the wharf is deprived of its use for the mooring or docking of vessels of every description permitted by the depth of tide water. The right to lay vessels at the "ends and sides of such wharf" conferred on the Eastern Railroad Company under St. 1872, c. 194, and the license of the commissioners, passed in so far as necessary to the plaintiff. *Forbush* v. *Lombard,* 13 Met. 109. *Fitchburg Railroad* v. *Boston & Maine Railroad,* 3 Cush. 58, 87. *Davis* v. *Atkins,* 9 Cush. 13. And the wharf built conformed substantially to the license. The triangular parcel moreover cannot be read out of the lease. If considered as the leasehold, all appurtenant rights and privileges are granted. They also would pass by implication. *Kent* v. *Waite,* 10 Pick. 138, 141. *Atkins* v. *Bordman,* 2 Met. 457, 464.

The master's conclusion that the leased area comprised the triangular addition, the wharf, the pier, and the structure, is supported by his subsidiary findings. It is also found on admissible evidence, that for some years the plaintiff used the space in question for docking small vessels, or lighters of shallow draft, and that such use was still feasible, even if under present conditions in "the coal business in the vicinity of Salem there is no demand for such use in connection with that business and there was no evidence . . . of any demand for such use for any other business." The plaintiff's rights of property have not been lost by the fact, that at present their exercise may be inexpedient or unnecessary.

The construction by the defendant of the proposed sea wall running diagonally to the leased premises from the defendant's land, and the driving of piles in the prosecution of the work, will materially restrict the open water front below the end of the riprap to which the plaintiff now has unlimited right of access and of use. It accordingly should not be compelled to accept damages for such permanent interference, but is entitled on the record to injunctive relief. *Siegel* v. *Starzyk,* 238 Mass. 291, 297, 298, and cases there collected.

The final decree, however, required the defendant to stop the construction of the sea wall at a point which will leave an open channel of only forty feet in width for the mooring and docking of vessels. The plaintiff, who appealed, contends that it should be seventy-five feet. The master, on evidence properly received, reports, that, if the channel is limited to forty or fifty feet, it will be necessary to bring in a lighter by pushing with a tug, and warping it in by lines, and it can be taken out only by a tug with a stern line. "This is the proper method of handling such boats in narrow spaces. The customary and usual method, however, of handling such a boat where there is no limit of space is to use a tug lashed to the boat upon its quarter — that is, the bow of the tug is lashed alongside the stern of the other boat for about one third of the length of the other boat. If this method is used in the space in question and this space is to be used for its entire length" a channel of seventy-five feet will be necessary from the "southwesterly side of the 'triangular section' at right angles thereto at the point at which the outside line of piles driven by the defendant meets said 'triangular section,' such width tapering to a width of at least forty feet at a point opposite the southeasterly end of the riprap, measured at right angles from the southwesterly side of the 'triangular section.' I find that this latter method of using the space in question is reasonable and proper if the plaintiff has the right to dock or lay vessels therein." The plaintiff can exercise its appurtenant rights as previously defined in any lawful manner, and the scope of this finding in the opinion of a majority of the court should not be restricted in favor of the defendant. It follows, that the interlocutory decree overruling the defendant's exceptions, and confirming the report, is affirmed. But the final decree must be modified in accordance with the opinion, and when so modified it is affirmed with costs.

*Ordered accordingly.*