(No. 37511.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED BONEY, Plaintiff in Error.

*Opinion filed September 27, 1963.*

THOMAS M. RYAN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and RICHARD T. BUCK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

In 1961 Fred Boney was found guilty, following a bench trial in the criminal court of Cook County, of the consolidated charges of armed robbery and rape, and sentenced to concurrent imprisonment for 1-20 years for robbery and 20 years for rape. On this writ of error defendant asserts that his conviction was contrary to the manifest weight of the evidence, and specifically contends that his alibi, coupled with the weakness of the identification by the prosecuting witnesses, establishes a reasonable doubt as to his guilt.

There is no controversy as to the occurrence of the crime itself. The prosecuting witnesses, husband and wife, testified that at 4:45 A.M. on September 10, 1961, they awoke in their apartment bedroom at 155 Burton Place, Chicago, to find a 75-watt bed lamp illuminated and a masked man with a pistol standing approximately five feet from their bed. The intruder bound, gagged and blindfolded the victims, also tying the husband's feet; he ransacked the bedroom, taking money and other items, then took the wife downstairs, raped her, and left the house.

The proof indicates he spoke many times during the 45-50-minute period he was in their apartment; the handkerchief mask covered only the lower portion of his face, and the wife testified it slipped down on one occasion before she was blindfolded. The husband described the intruder as a colored male of about 25 years, 5 feet 7 inches tall and 150 pounds with a brown complexion, slanting eyes, puffed nose and hair straight back, close to his head, slightly tufted around the sides. The wife's description largely corroborated that of her husband's although there was some minor variation as to the length of defendant's hair.

On September 12, Fred Boney was picked up by members of the State's Attorney's force; he was questioned and, apparently at defendant's request, or with his consent, given a lie-detector test. At the trial defendant testified, over the People's objection, that the polygraph operator told the officers that the examination indicated Boney's innocence. Following his arrest he was held at the criminal court building until the complainants, who had been met and escorted to the building by a State's Attorney's investigator, arrived and identified him in a lineup consisting of the defendant and four members of the State's Attorney's force known to the complainant husband in his capacity as an investigator for the State's Attorney's office. The complainant wife testified she was not acquainted with any of the officers in the lineup. It is unclear whether complainants made their identifications separately or jointly.

The husband testified that before being blindfolded he had observed defendant for 2 or 3 minutes from a distance of about 5 feet in a well-lighted bedroom. His wife was able to observe defendant somewhat longer since her husband was bound, gagged and blindfolded first. She testified that the intruder's handkerchief-mask had slipped from atop his nose on one occasion before she was blindfolded, and that by leaning her head back she had later been able to see the intruder beneath her blindfold. Both complainants

positively identified defendant in the courtroom as the man who had entered their apartment.

The defendant testified that in the early hours of September 10 he had been near Burton Place acting as a "protector" for Natalie Rosemore, a streetwalker with whom he lived and whom he had accompanied to the North Side. He disclaimed, however, any familiarity with Burton Place, or any knowledge that Mrs. Rosemore usually took her customers to the alley near or behind Burton Place. He stated he always waited on foot for Mrs. Rosemore at the points where she had attracted her customers. Boney further testified that he and Mrs. Rosemore had started back together to the South Side about a half hour before the intruder allegedly left the complainants' apartment. Boney also denied owning or having a gun. Mrs. Rosemore corroborated Boney's testimony and stated that she had not seen him with any of the stolen articles. Portions of the defendant's and Mrs. Rosemore's testimony were contradicted by Charles Perry who stated that he had often seen Boney waiting in a parked car on Burton Place; this witness also testified that he had seen defendant with several guns, one of which defendant attempted to pawn some months earlier. The officers testified that Boney, when originally questioned, had explained his whereabouts at the time of the crime much differently from the explanation given at the trial.

The only question having any color of substance in this record relates to the sufficiency of the identification by the complainants. Evidence of the extrajudicial identification of the defendant was introduced at the trial. The manner of conducting the "lineup" which complainants viewed consisted of placing the defendant together with three or four of the complainant husband's co-workers personally known to him. We have repeatedly condemned similar practices (*People* v. *Mikka*, 7 Ill.2d 454), and long ago stated, regarding identification procedures: "The proper way is to have the witness, without suggestion from any officers or

any interested persons, pick out the guilty party from a number of persons unknown to the witness." *People* v. *Sanders,* 357 Ill. 610, 622.

However, "There is no requirement in the law that an accused person must be placed among a group of persons for the purpose of testing the ability of a witness to identify him as the guilty person," (*People* v. *Crenshaw,* 15 Ill.2d 458, 464), and the manner "does not render the identification testimony incompetent, but only goes to the weight of the evidence." (*People* v. *Mikka,* 7 Ill.2d 454, 458-9; *People* v. *Washington,* 26 Ill.2d 207, 210.) That the trial judge gave little weight to the extrajudicial identification is clear from his statement: "The show-up that was conducted in the State's Attorney's office, I think, was of little value, if any, to the State." The basis of the finding of guilty was the testimony of the parties involved.

At times an improper or unsubstantiated identification has led to reversals of convictions. (*People* v. *Martin,* 380 Ill. 328; *People* v. *Gold,* 361 Ill. 23; *People* v. *Buchholz,* 363 Ill. 270; *People* v. *De Suno,* 354 Ill. 387; *People* v. *Crane,* 302 Ill. 217; *People* v. *Sanders,* 357 Ill. 610.) But in these cases there existed additional elements of elapsed time between the crime and the identification, contradictory opinions among the identifying witnesses, a question as to whether the witness saw the crime or had sufficient opportunity to observe the one acting, a proof of good reputation of the accused or the existence of a reliable alibi. None of these appear in this case.

Complainants agreed substantially in their descriptions of the intruder, and minor discrepancies in their testimony will not cause reversal. (*People* v. *Clay,* 27 Ill.2d 27.) They had ample time to observe the intruder (*People* v. *Crenshaw,* 15 Ill.2d 458, 466), and they both made positive judicial identification of the accused. That the positive identification by only one witness can be sufficient for conviction was recently reiterated by this court in *People* v.

*Washington,* 26 Ill.2d 207, 210. Results of the lie-detector test could not properly be introduced as evidence of either guilt or innocence of the accused, (*People* v. *Zazzetta, 27* Ill.2d 302,) and the People's objection thereto should have been sustained.

Admittedly, defendant was in the vicinity of the crime that night; his testimony that he was there to "protect" his streetwalking mistress, who largely corroborated him, and that they left the area before or about the time the offenses were committed could conceivably be true, but we certainly cannot quarrel with the trial court's finding to the contrary. Because a trial court as the trier of fact is peculiarly suited to determine questions of truthfulness, a reviewing court will not readily substitute its own conclusion, (*People* v. *Woods,* 26 Ill.2d 582), unless the proof is so unsatisfactory as to justify a reasonable doubt of guilt. *People* v. *Means,* 27 Ill.2d 11.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*