People of the State of Illinois, Plaintiff-Appellee, v.
Furman Posley, Defendant-Appellant.

**Gen. No. 50,423.**

First District, Third Division.

May 26, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendant was charged with burglary with intent to rape, attempted rape and burglary with intent to commit theft. He was convicted of the charge of burglary with intent to commit the crime of theft in a bench trial, and sentenced to two to eight years in the penitentiary. He was found not guilty of the crime of burglary with intent to rape and attempted rape.

The defendant in this appeal raises two points, (1) that the conviction must be reversed as it rests solely on evidence obtained by a series of illegal searches, and (2) in the alternative, the State failed to prove identification of defendant beyond a reasonable doubt.

The evidence showed that on August 29, 1964, someone entered the home of William Henk in DesPlaines, Illinois, took $50 from Mrs. Henk's wallet, $5 from the pant's pocket of her son and left her husband's papers and wallet strewn about the room.

Shirley Henk, age 15, lived at 1654 Sycamore in Des Plaines with her parents and brothers. Her bedroom was on the first floor of the building adjacent to the dining

room. At about 5:30 a. m. on August 29, 1964, she was awakened by a man who was shaking her. She observed the man after she had awakened and identified him as the defendant, and pointed him out in the courtroom. She further testified that the defendant held his hand over her mouth and told her to be quiet. He shone a flashlight in her face. She grabbed his hand and was able to observe him when the light shone on him. She saw his face as the beam from the flashlight struck it. The defendant kissed her arm and tried to pull the covers off of her. She held on to the covers and the defendant permitted her to sit up in bed. She then pushed him and ran out of her bedroom screaming. The defendant also ran out of the bedroom. Shirley ran upstairs to awaken her family. The witness also testified that the defendant "had an odor to him. It was like a shaving lotion odor. It was real heavy." The defendant ran out of the house through the front door. Shirley testified that her "dad" and brother came down and ran out of the house looking for the defendant. The police were called and appeared in about two minutes. Shirley also testified that after the defendant left the house she noticed that the bedroom drawers had been gone through, and in the living room she found her father's and brother's pants on the couch. The wallets taken from them were underneath them and had been gone through. She had occasion to go to the police station at about 7:00 o'clock in the morning and she there identified the defendant as the man who had been in her bedroom. She further testified that the defendant had a deep voice and she also identified the defendant by his voice at the police station as being the same voice that she had heard in her bedroom.

After the burglary had been reported to the police they saw an automobile parked on the street a block from the scene of the reported burglary. Unlike the other cars which were parked on the street, it had no

188

condensation on its windshield. The police looked in the car and found a pair of black shiny shoes, a hat, a sports jacket, and a Green Stamp booklet. They also looked in the glove compartment of the car but found it empty. Because of the report of a burglary to the police in that neighborhood, they disabled the car by pulling the distributor coil. The police then "staked out" the car from a reasonable distance. The police officer did not see the defendant enter the car; however, about an hour later one of the police officers noticed movement in the car and upon approaching the car found the defendant.

When the police first observed the car they ran a check on the vehicle's registration and discovered that it was owned by the defendant whose address was given as 5600 South Indiana Avenue, Chicago, Illinois. Upon looking inside of the car, after the police officer had noticed a movement in the car, they found the defendant lying on the front seat with his hands under the dashboard. At this point there is somewhat of a discrepancy as to whether the arrest of the defendant was made prior to a second search of the car, or whether it was made after the second search.

Police officer John Storm of the city of Des Plaines, Illinois, testified that he and his partner went to 1654 Sycamore pursuant to a notification that there had been a burglary at that address. Shirley Henk had given him a description of the man who had broken into the house. This description was radioed to other patrol cars by Officer Storm. He then noticed footprints outside of the house, on the grass, and followed them. At about 5:35 a. m. he talked with two other officers who reported a car "which might be involved in this case" parked about a block away. Slightly more than one hour later one of the officers radioed that someone was in the car. When Officer Storm arrived at the car, he watched the other officers search the defendant and his car. He

testified that there was a heavy odor in the car and he said it was similar to the odor he smelled at the Henk home.

Officer Storm testified that the search of the car revealed something hanging from the rear view mirror which smelled something like the odor in the Henk home, two screwdrivers and a flashlight in the glove compartment, and a pair of muddy, damp canvas shoes with grass around the soles on the floor under the back seat. The witness identified these shoes in court. He also testified that a pair of blue overalls were found on the floor next to the front seat. He further testified that the defendant's car was the only one in the area which did not have dew on it.

Officer Storm testified that two other police officers arrived at the car approximately thirty seconds before he did. When asked if the defendant had been placed under arrest at that time he answered in the affirmative. Later on in his cross-examination he testified that Officer Zumbrock, one of the officers who first reached the car, told the defendant "You are under arrest for burglary." Officer Storm further testified that Officer Zumbrock and he were the ones who went to the vehicle. When asked why Officer Zumbrock had placed the defendant under arrest for burglary, Officer Storm answered because of the circumstances, namely, the breaking into the house and the description of the man. He later, on cross-examination, testified that the reason for the arrest was because of the tools found in the vehicle, the two screwdrivers and the flashlight, and that they looked in the glove compartment first and then placed the defendant under arrest. On cross-examination, when asked why he made the search of the car he answered because of the circumstances surrounding the empty house, where the car was parked; that the registration had been checked and the car did not belong in that area. Officer Storm further on redirect examination testified

that the defendant fitted the description he had received from Shirley Henk as the man who had been in her house, and that the search of the car was made after he saw the defendant and the defendant fitted the description he had received.

Officer Lawrence Zumbrock also testified that he observed the car in question at or near 1659 Maple Street in Des Plaines at about 5:30 a. m. The car had no moisture or dew on the windshield or any other part of the vehicle, and that all the other cars parked in the area had dew on the windshield and other parts of the car; that upon opening the door he smelled a heavy odor like shaving lotion, and testified to the shiny black shoes on the rear floor, and a tan plaid sports jacket and a dark green short-rimmed hat on the back seat. The radiator of the car at that time was hot. Officer Zumbrock removed the coil from the distributor. Later, when they observed the defendant in the car, Officer Zumbrock testified they ordered him out of the car, had him place his hands on the roof, searched him for weapons and placed him under arrest. At that time the defendant was wearing the shiny black shoes which had previously been on the floor next to the back seat of the car, and also had on the tan sports coat which had previously been on the back seat. He testified that they then searched the vehicle and found two screwdrivers and a flashlight in the glove compartment. On the rear floor of the car he found a brown paper bag in which there was a pair of brown shoes wrapped in newspaper and three towels. The shoes were very wet and there was mud and grass on them. He also found a dark blue coverall jump suit. The two screwdrivers and the flashlight were not in the car when it was first observed at 5:30 a. m. The brown paper bag containing the wet brown shoes was not in the car when the car was first observed. The dark blue coverall jump suit, likewise, was not in the car when he looked earlier.

191

Officer Zumbrock testified that the defendant told him that he had never left the car. The defendant testified that the police officers came up to the car and told him to get out, that they were police officers and that they wanted him for burglary and attempted rape. The evidence also showed that the police officer smelled a heavy odor in the vehicle and that he had smelled the same odor on the hands of Shirley Henk and on her bed clothes. The defendant admitted that the shoes were his and that the two screwdrivers were his, as well as the dark blue coverall, which were found in the car.

██ As the record stands, Officer Storm testified that they searched the car before the arrest, while Zumbrock testified that they placed the defendant under arrest as soon as he came out of the car and before the search, and the defendant testified that when the police officers came up to the car they told him that they were police officers and then placed him under arrest. At the time of the arrest the police had been given the defendant's description, knew that a burglary had been committed shortly before the arrest, only one block away, smelled the same odor in the car as one of the police officers had smelled on the hands and bed clothes of Shirley Henk. Under these circumstances there was probable cause for arresting the defendant at that time. If we are to believe the testimony of Officer Zumbrock and the defendant, the second search of the car was made after the arrest. During the first search nothing was found in the car which was used as evidence. The items which were used in evidence were found as a result of a search following a valid arrest and were properly admitted in evidence.

██ The court heard the testimony of all of the witnesses, observed their candor or lack of candor while on the witness stand, and the question of credibility was one for the trial court to determine. The trial court could readily have concluded that Officer Storm was

confused in his testimony as to the time of the search, and also could have concluded that Officer Storm did not know technically what constituted an arrest. He could have been of the impression that the defendant was not under arrest until taken to the station. But no matter what his understanding of an arrest was, the trial judge, who is the trier of the fact, was the one to determine when the arrest was made and we agree with him that the arrest was made prior to the search and upon probable cause and it cannot be said that the search was unreasonable.

The defense cites section 108–1 of the Code of Criminal Law and Procedure (Ill Rev Stats 1963, c 38, § 108–1). That section provides that when a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of protecting the officer, preventing escape, finding the fruits of a crime, or finding the tools used in committing the crime. Since we have found there was a lawful arrest based upon probable cause for believing that the defendant had committed a crime, this statute can be of little comfort to the defendant.

The defendant also cites the case of People v. Erickson, 31 Ill2d 230, 201 NE2d 422, which stated that the question presented in that case was whether the totality of the facts and circumstances known to officers at the time of the search constituted probable cause justifying a search of the automobile without a warrant. We believe that the facts and circumstances known to the officers at the time of the search in question constituted probable cause justifying the search.

Officer Volberding testified that after the defendant had been brought to the police station he spoke to the defendant about searching his vehicle and the defendant consented. A search of the entire vehicle then began.

As a result of this search other exhibits were found which were offered in evidence, namely, $50 in money, a screwdriver and a pair of gloves. Behind the passenger's side firewall, in the interior cowl of the car Officer Volberding found the money, a screwdriver and gloves.

The defendant contends that since the officer testified merely to a conclusion when he stated that the defendant consented to this search, and since no facts were stated, the evidence was inadequate to establish a basis for a consent.

Defendant cites the cases of People v. Steinkraus, 291 Ill 283, 126 NE 202, and People v. Carter, 24 Ill2d 413, 182 NE2d 197. In the Steinkraus case, supra, the conclusions of the witness were admitted over the objection by the defendant. In the present case there was no objection interposed to the question or the answer. In the Carter case, supra, which merely cites the Steinkraus case as authority for the statement that a witness cannot testify as to his conclusions as to what a defendant said, the court did not discuss whether objections had been made or had not been made by the defendant, and held that in that case the witness's testimony did not fall within that proscription.

The defendant has cited numerous other cases which this court has examined and feels are not controlling herein. The defendant in this case had waived his right to object to the search the third time the police entered his car.

As to the second point, that the State failed to prove the identification of the defendant beyond a reasonable doubt, the defendant cites the case of People v. Burr, 356 Ill 452, 190 NE 902, as authority for the proposition that it did not appear whether at the time Burr was first identified by the complaining witness he was the only colored man in the room. In the instant case there was only one man in the room when defend-

ant was identified. In People v. Boney, 28 Ill2d 505, 509, 192 NE2d 920, the court said:

"However, 'There is no requirement in the law that an accused person must be placed among a group of persons for the purpose of testing the ability of a witness to identify him as the guilty person.' (People v. Crenshaw, 15 Ill2d 458, 464), and the manner 'does not render the identification testimony incompetent, but only goes to the weight of the evidence.' "

On authority of that case we believe that the court in weighing testimony could properly have concluded that evidence of identification was properly admitted and could have been considered in the determination of the guilt of the defendant.

The defendant in his testimony denied that he had committed the crime or that he had ever entered the Henk's home. He said he was working downtown as a clean-up man and decided to get another job. He was driving to O'Hare Airport to interview someone for a job but got lost on the way and his car broke down on a street in Des Plaines. He left the car to get some assistance. After returning to the car he tried to start it but couldn't. As he was trying to discover why the car would not start, the police came and arrested him. He testified that he did not know where the screwdrivers, flashlight or money came from, but admitted owning the wet shoes. He said the shoes got wet when he washed his car the afternoon before he was arrested. On cross-examination he admitted that the flashlight was his property. He further testified that he had applied for a job with United Air Lines at O'Hare about three weeks before his arrest.

The question of identification was one for the court to determine, and while the evidence is contradictory,

it can easily be understood how the trial judge disbelieved the story told by the defendant.

█ Based upon all of the evidence in this case, we conclude that the searches of defendant's automobile were properly made and were valid, and that the evidence sufficiently identified the defendant as the perpetrator of the crime. Consequently, the judgment is affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.