**People of the State of Illinois, Plaintiff-Appellee, v. James Thomas, et al., Defendants-Appellants.**

Gen. No. 52,174.

First District, Third Division.

December 19, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Kavanaugh, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Defendants appeal from an order finding them guilty of robbery. A jury trial was waived by the defendants, who pleaded not guilty. They received the following sentences: defendant Marvin Hampton was sentenced to the penitentiary for a term of not less than three nor more than five years; defendant James Thomas was sentenced to the penitentiary for a term of not less than five nor more than ten years; and Hughie Lewis was granted probation for three years with the condition of probation being that the first nine months of probation be served in the Cook County jail.

The defendants contend that they were not proven guilty beyond a reasonable doubt because the identification by Carlatus A. Jackson, the victim and sole witness for the prosecution, was not entitled to any weight because of the manner in which the lineup was conducted and because the identification was vague and uncertain.

The defendant Hughie Lewis contends that he should not have been convicted at all because he was neither a principal nor an accomplice.

The victim, Carlatus Jackson, testified as follows: On December 3, 1966, he was returning home from Mt. Sinai Hospital, where he worked, at about 7:00 p. m. He noticed four men walking together on the opposite side of Ogden Avenue toward Kedzie Avenue. The four men crossed Ogden Avenue and Marvin Hampton, one of the defendants, grabbed Jackson by the collar and told Jackson that "we are police officers." The defendants, James Thomas and Hughie Lewis, were within touching distance of the victim Jackson. Without any provocation, James Thomas struck the victim in the mouth. At this time a cruising squad car approached the scene, and Marvin Hampton told the victim not to say anything and not even to look around. The defendants Lewis, Thomas, Hampton and a fourth unidentified man

58

remained at the victim's side. No one in the group said anything to the police officers and the police officers said nothing to them. When the police car left, the defendant Thomas removed the victim's wallet, which contained a ten-dollar bill and some personal papers, from the victim's pocket and the group continued searching the victim. When nothing else was found on the victim, the defendant Thomas struck the victim in the stomach and the group then ran and fled the scene. The street at the location of the robbery was well lighted at the time of the incident. The victim then proceeded home and called the police. The police came to the victim's home about 45 minutes after his call and took him to the Damen Avenue Police Station. The defendants had been arrested by officers of the Chicago Police Department about one and one-half blocks from the scene of the crime between 7:30 and 8:00 p. m. in connection with another complaint. The police informed the victim that they might have the men in the station. The victim first saw the defendants in a room sitting on a bench and later in a lineup of four. The victim identified three of the four men in the lineup, namely defendants Thomas, Hampton and Lewis, as his assailants.

 The defendants first contend that the identification by Carlatus Jackson was not entitled to any weight because of the manner in which the lineup was conducted. They contend the foregoing because the police told the victim when he arrived at the station that "they might have the men in there." The police told the victim to wait outside. The three defendants then appeared in a lineup of four. The victim identified the three defendants.

The defendants argue that the identification made by the victim was the result of a definite suggestion of the police and they practically told him that they had the men he suspected. In support of their argument, the defendants cite People v. Boney, 28 Ill2d 505, at page 508, 192 NE2d 920, wherein the court said:

"The manner of conducting the 'line-up' which complainants viewed consisted of placing the defendant together with three or four of complainant husband's co-workers personally known to him. We have repeatedly condemned similar practices (People v. Mikka, 7 Ill2d 454), and long ago stated regarding identification procedures: 'The proper way is to have the witness, without suggestions from any officers or any interested persons pick out the guilty party from a number of persons unknown to the witness.' (People v. Saunders, 357 Ill 610, 622.)"

The defendants also cite the case of People v. Gardner, 35 Ill2d 564, 221 NE2d 232, in which the court stated that eyewitness identification ranks at the top of all factors that account for conviction of the innocent. In People v. Boney, supra, the court said on page 509:

"However, 'There is no requirement in the law that an accused person must be placed among a group of persons for the purpose of testing the ability of a witness to identify him as the guilty person,' (People v. Crenshaw, 15 Ill2d 458, 464), and the manner 'does not render the identification testimony incompetent, but only goes to the weight of the evidence.' (People v. Mikka, 7 Ill2d 454, 458-9; People v. Washington, 26 Ill2d 207, 210.)"

The court in Boney continued by saying that at times improper or unsubstantiated identification had led to reversals of convictions, but that in those cases there existed additional elements of elapsed time between the crime and the identification, contradictory opinions among the identifying witnesses, a question as to whether the witness saw the crime or had sufficient opportunity to observe the one acting, a proof of good reputation of the accused or the existence of a reliable alibi. In People v. Horodecki, 15 Ill2d 130, 154 NE2d 67, the court

held that if the victim were given an opportunity to view the suspect with a group of other people under proper safeguards, the proof of identification offered at the trial of the cause would be considerably strengthened. The court there also stated on page 135:

"However, the failure to do so does not render the identification incompetent, (People v. Coli, 2 Ill2d 186,) nor detract from the essential requirement that a person charged with a crime must ultimately be identified in a court of proper jurisdiction by competent evidence beyond a reasonable doubt pursuant to constitutional safeguards. It was for the jury to weigh the testimony and determine the credibility of the several witnesses. (People v. Coli, 2 Ill2d 186; People v. Barad, 362 Ill 584; People v. Nicholson, 404 Ill 122; People v. Leach, 398 Ill 515.)"

The defendants also argue that the identification should carry no weight because it was unsatisfactory and doubtful. They support this argument on the basis that the defendants denied the testimony of the victim Jackson, and that Hampton, one of the defendants, testified that he was walking to the hospital to get his arm wound stitched and stated positively that he did not rob Jackson, and that the defendant Lewis, while denying that he had robbed Jackson, also said he had never seen Jackson before that day. In support of this contention, the defendants cite People v. Gold, 361 Ill 23, 196 NE 729, wherein it was stated that an identification made by a stranger without sufficient opportunity to definitely fix features or characteristics must be an opinion or conclusion of the identifying witness. Defendants also cite People v. Mc-Gee, 21 Ill2d 440, 173 NE2d 434, in support of the statement that where the conviction of a defendant rests upon identification which is doubtful, vague and uncertain it would not produce an abiding conviction of guilt.

61

■ In the case at bar, Jackson's identification was made within forty-five minutes after the crime was committed. He was able to observe the defendants at the scene while they were within arm's length of him on a well-lighted street. The time involved in the commission of the crime was lengthened by reason of the fact that a squad car approached just as the defendants were about to commit the crime and they were delayed until the squad car left. The victim in this case during his direct examination was positive in his identification of the defendants and his testimony was not shaken at any time during the trial. He reaffirmed his identification on redirect examination. The trial judge before whom this case was tried was able to observe the demeanor of the witness, his candor or lack of candor, and was able to determine his credibility. The identification by the victim in this case was not doubtful, vague or uncertain.

■■ It is well established that the defendants' identification was a question for the determination of the court in this case, which determination will not be disturbed because it was not so unsatisfactory or implausible as to justify a reasonable doubt of defendants' guilt. (People v. Pecho, 362 Ill 568, 200 NE 860; People v. Napper, 78 Ill App2d 451, 223 NE2d 194.) The identification and guilt of the defendants in this case was proven beyond a reasonable doubt.

We then come to the contention raised by defendant Lewis to the effect that he neither aided nor abetted in the crime of robbery in that he was neither a principal nor an accomplice and therefore should not have been convicted. The defendant Lewis argued that he did nothing to the victim Jackson when the robbery was perpetrated. He did not steal the wallet; he did not hit Jackson and he did not touch him. He also argues that the record is silent as to any prior conversation with defendant Lewis relating to his having planned to rob Jackson or anyone else. He reasons from the foregoing that he was

62

not a principal and likewise he was not an accomplice. He argues that just because he happened to be present when the crime occurred is not sufficient to make him an accomplice. In support of his argument defendant cites People v. Hrdlicka, 344 Ill 211, 176 NE 308, wherein one Grysh who was a judge of election saw Hrdlicka change the markings on ballots. Grysh did not participate in the alteration and said nothing, but certified the returns as being true and correct. The court in holding Grysh not guilty said on page 222:

> "The knowledge that a crime is being or is about to be committed cannot be said to constitute one an accomplice nor can the concealment of knowledge or the mere failure to inform the officers of the law when one has learned of the commission of a crime. (1 RCL 157) It cannot be said that Grysh aided, abetted or assisted in the commission of the crimes. They are affirmative in character. It is not sufficient that there is a mere negative acquiescence not in any way made known to the principal malefactor."

There was nothing in that case to indicate that Grysh, the election judge, had aided, abetted or assisted in the act committed by the defendant Hrdlicka.

Defendant Lewis also cites the case of People v. Richie, 317 Ill 551, 148 NE 265, wherein the court said on page 558:

> "To constitute one guilty of a crime as principal *he must be present* or participate or do some act at the time of the commission of the offense in furtherance of the common design. . . ." (Emphasis supplied.)

Lewis also cites the case of People v. Barnes, 311 Ill 559, 143 NE 445. In that case Bowers and a Lillian Barnes were convicted of the larceny of an automobile. Bowers was arrested while driving a stolen car in which Lillian

Barnes was riding with her five-year-old child. Lillian Barnes had asked Bowers where he had picked up the car, and he told her that it was none of her business. She denied having any knowledge as to where Barnes got the automobile and did not encourage, aid, abet or assist him to steal it. The court in reversing her conviction held that in order for a party to be convicted as a principal it must be shown that he or she by some affirmative act actually advised, encouraged, aided or abetted the perpetration of the crime and that a mere presence of a person is not sufficient to constitute him a principal unless there is something in his conduct showing a design to encourage, incite or in some manner aid, abet or assist the actual perpetrator of the crime.

Defendant also cites People v. Bongiorno, 358 Ill 171, 192 NE 856, which case employed the same language cited in People v. Richie, supra. Other cases to the same effect are cited by the defendant. In People v. Johnson, 61 Ill App2d 319, 210 NE2d 344, after discussing the principle enunciated by the Supreme Court, the court said on page 323:

"The case of People v. Thickstein, 14 Ill2d 132, 150 NE2d 813 (1958) dealt with a conviction of robbery where the appellant claimed there was no direct evidence in the record that he did any affirmative act in connection with the crime or joined in a common design to commit it. The Supreme Court said,

" 'While mere presence or negative acquiescence is not enough to constitute a person a principal, circumstances may show there is a common design to do an unlawful act to which all assent. In such cases it is not necessary that each one shall take an active part in the commission of the crime. Whatever is done in furtherance of the design is the act of all, and each is guilty of the crime. (Citations omitted.)

" 'In a criminal prosecution the factual issues are for the jury to determine, and this court will not

disturb its finding unless the proof does not meet the requirements of law. From the facts and circumstances in this record, the jury could reasonably find that plaintiff in error knew the robbery was to be committed, that he participated therein, and that he is guilty as a principal.' "

In People v. Bracken, 68 Ill App2d 466, 216 NE2d 176, this court said, on page 472:

"If the proof shows that a person is present at the commission of a crime without disapproving or opposing it, it is competent for the jury to consider this conduct in connection with other circumstances and thereby reach the conclusion that he assented to the commission of the crime, lent to it his approval, and was thereby aiding and abetting in its commission."

In the instant case the evidence showed that the four men crossed the street together and that Hampton grabbed the victim. The victim identified two of the other three as defendants Thomas and Lewis. The defendant Lewis stood within touching distance to the right side of the victim during the occurrence. While the robbery was in progress, a police car pulled up to the scene and the victim was cautioned to remain silent, which he did. Lewis and Thomas remained at the victim's side. Thomas removed the victim's wallet and searched and struck the victim all in the presence of Lewis. Lewis and the other defendants then fled the scene together. Lewis did nothing which would indicate his disapproval or opposition to the robbery. The court in People v. Washington, 26 Ill2d 207, 186 NE2d 259, stated on page 209:

"It is the defendant's first contention that the evidence of the prosecution shows at best only his mere presence at the crime and his negative acquiescence therein, and is therefore insufficient to support a

65

finding that he aided, abetted or assisted in the robbery. While it is true that mere presence or negative acquiescence is not enough to constitute a person a principal, one may aid and abet without actively participating in the overt act and if the proof shows that a person was present at the commission of the crime without disapproving or opposing it, it is competent for the trier of fact to consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the crime."

■ We conclude from the evidence in this case that the defendant Lewis was proven to be a participant in the act of robbery and that Lewis together with the other two defendants were proven guilty beyond a reasonable doubt.

Affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.