People of the State of Illinois, Plaintiff-Appellee, v. Larry
M. Williams, Defendant-Appellant.

Gen. No. 52,183.

First District, Fourth Division.

December 31, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Sheldon M. Schapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSES CHARGED

Armed robbery and aggravated battery. Ill Rev Stats (1965), c 38, §§ 18–2, and 12–4a and 12–4b(1).

JUDGMENT

After a bench trial, defendant was found guilty on both charges and sentenced to a term of 2½ to 5 years for armed robbery.

POINTS RAISED ON APPEAL

Defendant was not proven guilty beyond a reasonable doubt.

(1) The State failed to call a key witness.

(2) The State's evidence was unbelievable.

(3) The identification testimony was unsatisfactory.

(4) The State failed to prove that defendant was either the principal or an accomplice.

330

EVIDENCE

*John Kelley*, for the State

At approximately 2:30 or 3:00 a. m. on October 24, 1966, he was awakened in his apartment at 921 Windsor Avenue by three boys who kicked in his door. They beat him over the head with a hose from a fire extinguisher and cut him with a knife, causing a wound which required twenty stitches to close. He was also injured above the right eye and behind the right ear. The three asked for money upon threat of death, and he directed them to the money on his dresser. They took $30 from the dresser, a .38 Smith and Wesson revolver, and a 30-30 Winchester rifle. He was unable to recognize any of the men because his face was covered with blood. He is hard of hearing.

*Carol Baker Lawson*, for the State

She lives at 921 Windsor Avenue in the apartment next to Mr. Kelley. The door to her apartment is at a right angle to the door to Mr. Kelley's apartment. On October 24, 1966, at 2:30 or 3:00 a. m., she was awakened by screams coming from Mr. Kelley's apartment. She woke her husband, who turned on the kitchen light and opened the door. The light came from behind her into the hall. She was standing a little to the side and behind her husband as they looked into the hallway. She saw three men come out of Mr. Kelley's apartment and walk in front of her door toward the stairs. She did not recognize the first or third boy to pass by because their heads were turned, but she did recognize the second to be defendant. Defendant stood and stared at her for "not even quite a minute" as he went by at a distance of three feet. She recognized defendant, for she had seen him on the street and knew his mother and two brothers. Her husband asked the three what they were doing in Kelley's apartment, and they said they were helping Kelley because he was sick.

As soon as she heard Mr. Kelley screaming, she called the police. The police arrived after the men had left.

331

She did not talk to them at that time, but later in the morning she spoke to detectives. A few days later, Detective Muscolino showed her five or six photographs of men. She identified a photograph of defendant and recognized his brother, but she knew none of the other men photographed.

*Detective Leonard Muscolino,* for the State

On October 24, 1966, he saw John Kelley in the emergency room of Weiss Memorial Hospital. Mr. Kelley had suffered a stab wound in the left arm and in the chest, and had several bumps and bruises on his head. He returned to the Kelley apartment where he saw that the door, which was padlocked, had been cracked and pulled away from the plaster. At that time he interviewed the other people in the apartment building.

He returned to the apartment with Mr. Kelley on October 28 and found it to be ransacked. There was a chair knocked over and blood on a bath sheet. He found an open knife and an 8 to 10-inch piece of fire extinguisher hose with a nozzle at one end lying on the floor. He showed six pictures to Mrs. Lawson and she identified defendant. An arrest warrant for defendant was obtained, and after some difficulty in finding him, the arrest was made on November 12.

*Police Officer Samuel Barsevich,* for the State

On November 12, 1966, while investigating this case, he was invited by defendant's wife to enter the premises at 5038 N. Kenmore. There he saw defendant and arrested him, recognizing him from the photographs.

*Larry M. Williams,* defendant, on his own behalf

He move to Chicago from Kentucky four years prior to the trial. He was married in June 1965 and has two children. He worked for his stepfather as a house painter. He was nineteen years old. He had been separated from his wife and had been living with his mother at 925 Windsor Avenue.

332

He did not know where he was on the evening of October 24 or the day before. He did not remember where he was on October 25, 26, or 28. He did not rob Mr. Kelley on October 24. He was friendly with Mr. Kelley and had worked for him for several days. He knew Mr. Kelley lived at 921 Windsor, but had never visited him, and did not know that he had a gun, a pistol, or money in his house.

He was arrested on November 12 at his wife's house while he was visiting his children.

OPINION

■ The case against defendant rests primarily upon the identification testimony of Mrs. Lawson. This evidence showed that she had ample time and opportunity to see and recognize defendant at close range in the apartment hall under satisfactory lighting conditions. Her identification was strengthened by the fact of her acquaintance with defendant in the neighborhood and her selection of his photograph from among others shown to her by the police. Her identification testimony was positive and was not shaken on cross-examination. The weight to be given this testimony is for the trier of fact, and the testimony of one credible witness can be sufficient for conviction even when contradicted by the accused. People v. Boney, 28 Ill2d 505, 192 NE2d 920; People v. Washington, 26 Ill2d 207, 186 NE2d 259.

■ (1) Defendant claims that the failure of the State to call Mr. Lawson to testify must weigh against the State on the matter of defendant's identification. He points to the fact that according to Mrs. Lawson, her husband had been standing a little in front and to the side of her and that he, too, could have seen the three assailants leave Mr. Kelley's apartment. The failure of the State to present Mr. Lawson as a witness does go to the weight to be given the identification evidence, but in

this case is not sufficient to raise any doubt as to defendant's identification.

Defendant relies on People v. DiVito, 66 Ill App2d 282, 214 NE2d 320, and Morei v. United States, 127 F2d 827. We feel that these cases are sufficiently distinguished in People v. Williamson, 78 Ill App2d 90, 223 NE2d 453, a case much closer to ours on the facts.

(2), (3) Defendant next contends that the testimony of Mrs. Lawson was so unsatisfactory that it failed to provide sufficient evidence to overcome the presumption of innocence and establish defendant's guilt beyond a reasonable doubt. Aside from his argument as to the identification evidence, defendant contends that it is unbelievable that a man with defendant's criminal record would be so foolish as to stop before Mrs. Lawson's door long enough to be identified. This, too, was a matter for the trier of fact. The police procedure in regard to the photographs was proper for a witness' identification of an assailant for the purpose of investigation and arrest, and it does not suffer a suggestive taint from the rule in Stovall v. Denno, 388 US 293. Since defendant was not in custody, submission to Mrs. Lawson of a group of six photographs was a justifiable parallel to a lineup procedure, thereby making it possible for the police to search for defendant and effectuate his arrest.

Defendant sums up these contentions by arguing that Mrs. Lawson's testimony cannot be believed to establish defendant's guilt because it is contrary to the laws of nature and universal human experience, citing People v. Dawson, 22 Ill2d 260, 174 NE2d 817; People v. Coulson, 13 Ill2d 290, 149 NE2d 96; and People v. Ware, 23 Ill2d 59, 177 NE2d 362. In these cases, convictions were reversed, however, because there existed great inconsistencies in the evidence, both between the parties and within the prosecuting witnesses' own testimony. We find no such inconsistencies here. Mrs. Lawson's testimony was challenged only by a general denial by defendant of

his participation in the crime. People v. Davis, 71 Ill App 2d 300, 218 NE2d 850.

(4) The final contention of defendant is that the evidence failed to establish beyond a reasonable doubt that defendant was the principal or an accomplice in the crimes charged. This claim is based on the fact that no witness saw which of the men hit Mr. Kelley with the fire hose, which took the money, or which stole the revolver and the rifle. Mr. Kelley couldn't see because his eyes were full of blood. Mrs. Lawson only saw defendant leave the apartment, and did not see defendant aid or abet anyone. We are not convinced by this argument. The Criminal Code provides:

A person is legally accountable for the conduct of another when:

. . . . . .

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. Ill Rev Stats (1965), c 38, § 5-2(c).

Proof of acts in furtherance of a common design or purpose to commit a crime need not be supported by words of agreement, but may be drawn from the circumstances surrounding the commission of the act by the group. People v. Hill, 39 Ill2d 125, 233 NE2d 367; People v. Richardson, 32 Ill2d 472, 207 NE2d 478; People v. Rybka, 16 Ill2d 394, 158 NE2d 17. It is true that to support such a common design the proof of aiding, abetting or assisting in the perpetration of the crime must show some conduct of an affirmative nature, and mere presence or negative acquiescence is not sufficient. People v. Powers, 293 Ill 600, 127 NE 681; People v. Barnes, 311 Ill 559,

335

143 NE 445; People v. Hobbs, 400 Ill 143, 79 NE2d 202. One may, however, aid and abet without actively participating in the overt act. We conclude that the proof in the instant case was ample to establish defendant's guilt beyond a reasonable doubt. People v. Richardson, 32 Ill2d 472, 207 NE2d 478; People v. Hill, 39 Ill2d 125, 233 NE2d 367; People v. Nugara, 39 Ill2d 482, 236 NE2d 693; People v. Thomas, 104 Ill App2d 56, 243 NE2d 611.

DECISION

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.