THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY HARTFIELD, Defendant-Appellant.

(No. 54394; ▮▮▮▮▮▮▮▮▮▮▮

First District—February 23, 1971.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Gerald W. Getty, Public Defender, of Chicago, (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and John A. Sibaitis, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant was convicted after a bench trial of the offense of armed robbery. Judgment was entered thereon and he was sentenced to a term of two to three years. Defendant appeals and contends that (1) there was no evidence to support the allegations of the indictment that he was armed with a dangerous weapon or that he took any property from the victim and (2) his guilt was not established beyond a reasonable doubt. *EDWARD TINSLEY, the complaining witness for the State testified:*

He is employed as a bus operator with the Chicago Transit Authority and on December 20, 1968, at approximately 11:00 P.M., at 59th and

Yale, defendant and a man subsequently identified as "Sampson" boarded the bus. Sampson paid both fares with a dollar bill and received change. Sampson and defendant then went to the rear of the bus and sat down.

After the bus proceeded a few blocks, Sampson came forward and said "You are going the wrong way, I want my money back." He advised Sampson that he could not return the money but he did furnish Sampson with two transfers for an additional dime. Sampson then returned to where the defendant was seated at the rear of the bus.

After the bus had proceeded another few blocks, Sampson arose again, came forward and sat across from him in the long seat by the door. Within a minute or so, defendant arose, came forward and sat alongside Sampson, at which time Sampson arose, stood next to him, leaned over and said, "Give me the money." At this time Sampson placed the point of a six inch ladies' hat pin against his throat. He said "There it is, take it" pointing to his changer. Sampson beckoned to defendant, with a head movement to rise, which defendant did and stood next to Sampson. At this moment he surrendered his currency which Sampson removed from the shirt pocket. Sampson demanded more money and he reached into his trouser pocket and turned over a five dollar bill and also unlatched his changer and gave it to Sampson. At this juncture two women came forward to disembark from the bus and passed between Sampson and defendant and stood at the doorway. Sampson advised him not to open the door until told to do so. When the bus stopped, the door was opened at Sampson's command and Sampson rushed out. Defendant attempted to get out of the bus but the women were now in the doorway and impeded defendant's progress. He apprehended and restrained defendant with the assistance of a passenger.

The police were called and they took defendant into custody. When the victim arrived at the police station, defendant said to him, "I am going to get you." After the robbery all the passengers fled the bus, except the one who helped him subdue defendant and this passenger departed without identifying himself.

As the bus approached Cottage Grove, the passengers were advised and that is when the two women came forward. After Sampson said "Give it to me," Sampson motioned to defendant who then stood up next to Sampson. Sampson was leaning over him, a bit behind him and defendant was to the right. The women walked between defendant and Sampson and down the steps. Although no blows were struck, defendant struggled with him and was endeavoring to get away when a passenger assisted him in detaining defendant. When he announced "Cottage Grove" the steps to the exit were clear but defendant did not take the opportunity to step down into the stairwell of the bus. At the trial the

witness at the request of the assistant state's attorney, came off the witness stand into the well of the court and demonstrated where defendant was standing in relation to Sampson during the robbery.

*GREGORY HARTFIELD, defendant, testified:*

He did not know "Sampson" too well and had seen him occasionally. The name Sampson could very well be a "nickname" and he did not know Sampson's name or address. He could not recollect how he first met Sampson but testified that "Sampson" "just hangs around." On the evening of the robbery, defendant encountered Sampson. He gave Sampson a $5.00 bill with which to purchase beer because defendant was underage. He and Sampson partook of the beer and then defendant went home and emerged a short time later to make a phone call at which time he saw Sampson and remembered that he had not received his change. When he confronted Sampson about the change from the beef purchase, Sampson swore that it had previously been given back to him. They began to argue as Sampson boarded a bus and he followed Sampson for the purpose of getting his change. He did not know where Sampson was going until they were on the bus and Sampson told him he was going to visit a cousin. While in this bus defendant and Sampson argued about the change and finally Sampson was told to keep it and forget about it but warned that the boys in the neighborhood would be told about it. Sampson then responded, with words that suggested Sampson might give the change to defendant.

At 59th and Wentworth both alighted from the bus and boarded another whereupon Sampson paid their fares. Defendant was without funds. They proceeded to the rear of the bus and sat down and within a few blocks of travel, Sampson arose and went to the front of the bus and stood by the victim. At this time the victim announced Cottage Grove and defendant arose and also proceeded to the front of the bus where he sat down on the long seat to the right of the victim. At that moment two women passengers came forward to disembark. Sampson got off, followed by the women, while defendant was restrained by the victim and a passenger. Defendant admitted that he threatened the victim, but that this was caused by his agitated and nervous state.

Sampson's friends are known to defendant, but defendant never advised his attorney. He told the arresting officer about Sampson, but also testified he did not tell the police. However, he did tell the police "he knew nothing of these patricular circumstances." Sampson never divulged the address of the cousin. During the ride on each bus, defendant endeavored to recover the change from Sampson. Defendant denied that he came forward and sat next to Sampson opposite the driver, but admitted that while Sampson was standing over the driver Sampson

beckoned him to stand there. Defendant could not remember whether he stood up and joined Sampson or whether defendant was shoulder to shoulder with Sampson. He denied seeing Sampson robbing the victim. He was standing next to Sampson when the bus stopped and he tried to get off. Defendant did not hear Sampson say anything to the victim at any time. His inability to remember clearly what occurred was due to the fact that he was intoxicated that evening. The fare for the first bus was furnished partially by defendant.

Upon further interrogation defendant related that Sampson gave him some change before they mounted the first bus, but denied that he had previously testified that he gave money to Sampson to assist in paying their fares.

Defendant also presented reputation witnesses who testified to his good reputation in the community for telling the truth.

*OPINION*

Defendant argues that the evidence fails to establish beyond a reasonable doubt that he aided or abetted Sampson in robbing the bus driver. We did not find this contention convincing. The record reveals that defendant was standing next to Sampson when the currency and changer were taken and his feigned ignorance of what was transpiring before his very senses was properly rejected by the trial court. Defendant sought to charge his uncertain recollection of the events on the bus because of his alleged intoxication. This is incompatible with his ready and detailed recollection of everything else that occurred earlier in the evening and after the robbery. Defendant also sought to exculpate himself from his association and comradeship with Sampson by explaining he was following him for the sole purpose of recovering change from a five dollar bill. Although defendant engaged in a heated argument with Sampson about this change, to the point that defendant warned Sampson he was going to tell the fellows in the neighborhood of Sampson's perfidy in refusing to surrender the change, defendant followed Sampson, sat with him and moved up to the front seat and obediently obeyed Sampson's direction and stood with him at the bus driver's seat just shortly after Sampson placed the hat pin point to the victim's throat and announced his purpose.

The two women sought to alight from the bus just at the moment the robbery had been accomplished and at the same moment Sampson and the defendant were seeking to leave the bus. The victim related that the defendant seemed to be blocking the view of the other passengers by standing alongside Sampson during the robbery. Another function of defendant's presence alongside Sampson was obviously to furnish additional intimidation and ready force to persuade the victim, in the event

the hat pin was not sufficient, to surrender his property without any resistance.

These are affirmative acts committed by defendant that show that he was in concert with Sampson and aided and assisted him in the commission of the robbery. The threat addressed to the victim in the presence of the police officers, in a police station, is not the utterance of one wrongfully accused. His attempt to flee from the bus and the subsequent forceful restraint by the victim and a passenger are further evidence that detract from his protestations of innocence.

The Criminal Code provides:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. Ill. Rev. Stat. (1967) ch. 38, par. 5—2(c)."

In *People v. Williams* (1968), 104 Ill.App.2d 329 at page 335 this court said:

"Proof of acts in furtherance of a common design or purpose to commit a crime need not be supported by words of agreement, but may be drawn from the circumstances surrounding the commission of the act by the group. Cases cited. It is true that to support such a common design the proof of aiding, abetting or assisting in the perpetration of the crime must show some conduct of an affirmative nature, and mere presence or negative acquiescence is not sufficient. Cases cited. One may, however, aid and abet without actively participating in the overt act."

■■ Defendant's conduct was not consistent with that of an innocent person similarly situated. In *People v. Wright* (1968), 99 Ill.App.2d 377 the defendant presented the same contentions we have in the case at bar. There, a woman was boarding a bus when she noticed her purse was open and her wallet had been removed. A police officer on the bus apprehended the defendant and his co-indictee and testified that he observed the defendant jostle the victim as they boarded the bus and the defendant asked the other passengers to hurry and get aboard. This witness saw the co-indictee remove the wallet from the purse and at which time the officer apprehended him and heard the defendant shout "police officer" and the officer apprehended him also. The victim discovered her loss just moments before the officer made his arrests and when she accused the defendant and his co-indictee, they denied it, but the defendant advised the co-indictee that they should immediately dis-

embark because they were on the wrong bus. The co-indictee was observed as he threw the wallet under the driver's seat and sought to "straighten the matter out," but defendant advised him to be quiet. Defendant denied any participation but did testify that he and the co-indictee were old friends and had met on another bus and they were transferring to the second one, without the other's knowledge. He further denied being on the bus, but only got as far as the loading platform. The court held that the acts committed by defendant showed circumstantially and beyond a reasonable doubt that he shared with the co-indictee a common design to commit the offense of theft and he aided and abetted in its commission. In the case at bar, we also find that the evidence established beyond a reasonable doubt that defendant aided and abetted Sampson in the Commission of this armed robbery.

■■■ As this was a bench trial, the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn therefrom are for the trial judge who saw and heard the witnesses testify. This court will not set aside a conviction depending upon the weight of the evidence except to prevent an apparent injustice. We therefore affirm the judgment.

Judgment affirmed.

LEIGHTON, P. J., and McCORMICK, J., concur.